IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE R.E. LOANS, LLC, et al., | § | |
| | § | |
| Debtors. | § | |
| | § | |
| WELLS FARGO CAPITAL FINANCE, LLC, | § | |
| | § | |
| | § | Civil Action No. 3:12-CV-3513-D |
| Plaintiff- | § | (Bank. Ct. No. 11-35865-BJH-11; |
| Appellant, | § | Adv. No. 11-03618-BJH) |
| | § | |
| VS. | § | |
| | § | |
| GORDON NOBLE, et al., | § | |
| | § | |
| Defendants- | § | |
| Appellees. | § | |

_____

APPEAL FROM THE
UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS

FITZWATER, Chief Judge:

In this appeal from a bankruptcy court order denying a motion to stay and temporarily enjoin a class action and a judgment dismissing an adversary proceeding, the question presented is whether the claims of the plaintiffs in a state-court putative class action are property of the debtor's estate. Concluding that the claims in part are property of the estate and in part are not, the court affirms in part, and reverses and remands in part, the bankruptcy court's order and judgment.

I

A

Plaintiff-appellant Wells Fargo Capital Finance, LLC ("Wells Fargo") initiated this adversary proceeding against defendants-appellees (the "Class Plaintiffs"), who are class plaintiffs in a consolidated putative class action pending against Wells Fargo,[1] Greenberg Traurig, LLP ("Greenberg"), and others in California superior court (the "Class Action").[2] Wells Fargo sought a determination that the claims of the Class Plaintiffs in the Class Action are property of the estate of R.E. Loans, LLC ("REL"), a chapter 11 debtor, and therefore could only have been brought by REL as debtor-in-possession. Wells Fargo also sought by motion to stay the Class Action and enjoin the Class Plaintiffs from prosecuting their claims against Wells Fargo. Wells Fargo argued that, based on the face of the consolidated class action complaint ("consolidated complaint"),[3] the claims asserted against Wells Fargo in the Class Action are property of the REL bankruptcy estate.

B

In the Class Action, the Class Plaintiffs sue on behalf of former investors of REL and its affiliate, Mortgage Fund '08 LLC ("MF08"), who they contend lost millions of dollars

---

[1]Wells Fargo is sued as "Wells Fargo Capital Finance, Inc. f/k/a Wells Fargo Foothill, LLC." Supp. R. 2:385. The court for clarity will refer to this entity as "Wells Fargo."

[2]Defendants-appellees are Gordon Noble, Arlene Dea Deeley, Fredric C. Mendes, Nancy Rapp, Phillip Cantor, John Emanuele, Irene Lee, and David Nolan.

[3]The consolidated complaint was filed on January 9, 2012 and amended on February 15, 2012. As have the parties, the court will cite the version of the consolidated complaint that is found at volume two of the supplemental record on appeal. *See* Supp. R. 2:383-443.

as a result of a scheme carried out by the managers of REL and MF08, acting in concert with Greenberg and Wells Fargo. According to the consolidated complaint,[4] REL and MF08 made real estate development loans using funds raised from investors. REL was organized as a limited liability company, and those who invested became members of REL.[5] REL and MF08 were managed by the same individuals (the "Managers").[6] As limited liability company members, REL members had control rights. For instance, members holding a majority of interests could remove and replace the Managers, vote to dissolve REL, or (with limited exceptions) amend the operating agreement. Members were entitled to withdraw all or part of their investments on written notice.

Beginning in mid-2007, the Managers, Greenberg, and Wells Fargo developed and carried out a scheme through which the Managers, with the knowing assistance of Greenberg and Wells Fargo, acted against REL's members and MF08's noteholders. They inflicted significant harm by stripping REL's members of their ownership interests in, and rights of control over, REL, and by changing the nature of their investments. They injured MF08's

---

[4]The factual recitation set out in § I(B) of this opinion is taken from the consolidated complaint. The court recognizes that many of these allegations will be contested in the Class Action.

[5]The consolidated complaint alleges that investors in MF08 received promissory notes in exchange for their investments.

[6]According to the consolidated complaint, Walter Ng, Kelly Ng, Bruce Horwitz, and Barney Ng managed REL and MF08 through two affiliated companies, B-4 Partners, LLC and Bar-K, Inc. ("Bar-K"), and managed MF08 through The Mortgage Fund, LLC and Bar-K.

noteholders by using their funds to make loans that were funneled through REL. REL's auditors had warned the Managers that REL was violating the securities laws by selling unregistered securities that did not qualify for exemption from registration under federal and California law. In March 2007, REL's lawyers advised the Managers that REL had been violating securities laws since 2002 and that REL faced substantial civil penalties for continuing to do so. The lawyers warned them to stop soliciting or accepting any future investor contributions.[7] By mid-2007, REL faced a severe cash liquidity shortage, and this problem was exacerbated because the Managers had been told not to take investments in REL because their selling shares was violating federal and state securities laws. Although the Managers knew they were obligated by their fiduciary duties to disclose to the members their past securities violations and cash liquidity problems, disclosure could cause the members to lose confidence in the Managers and in the safety of their investments, and could prompt members to withdrew their investments and exercise their control rights against the Managers, ending the Managers' ability to continue to reap financial benefits from operating REL.

Together with Greenberg and Wells Fargo, the Managers developed and carried out a plan to hide their past securities violations and REL's cash shortage. Greenberg, who was counsel to the Managers, brought in Wells Fargo for the purpose of lending money to REL

---

[7]According to the consolidated complaint, from 2002 through 2006, REL violated state and federal securities laws by selling REL memberships, which constituted securities, but failing to register the offerings with the Securities and Exchange Commission.

to enable the Managers to maintain the illusion that REL was liquid. The Managers, Greenberg, and Wells Fargo knew that, without the prior approval of REL's members, REL was not authorized to borrow operating cash from a third-party lender and encumber REL's assets or any portion of its loan portfolio as security for third-party borrowings. The Managers had repeatedly promised the members that REL would not raise capital through borrowing from third-party lenders. So the Managers entered into a secret transaction in which Wells Fargo extended to REL a $65 million line of credit secured by a perfected first-priority lien against REL's assets (an amount in excess of $700 million). Wells Fargo also required REL to endorse and deliver $250 million in notes receivables.

To obtain the members' approval of the Wells Fargo loan after the fact, Greenberg masterminded an exchange transaction ("Exchange Offering") that transformed the members from equity shareholders of REL into creditors whose security interests were junior to Wells Fargo's. Under the Exchange Offering, members were solicited to exchange their equity membership shares for promissory notes secured by REL's portfolio loan assets. Although the Managers portrayed the Exchange Offering as a restructuring of REL, it was a subterfuge to persuade the members to give after-the-fact approval to the unauthorized Wells Fargo loan, legitimize the Managers' past, undisclosed securities laws violations, and divest the members of their interests and control rights in REL. The Exchange Offering was designed to eliminate the members' equity shares and replace them with security interests that were junior to the interests held by Wells Fargo. When the scheme was revealed, REL defaulted on the line of credit loan and on the promissory notes that it had issued to the members.

MF08 also defaulted on its obligations to its noteholders.  The Managers and Greenberg made numerous false and misleading statements of material fact to the members to obtain their agreement to the Exchange Offering, thereby breaching their fiduciary duties to the members and committing securities fraud, negligent misrepresentation, and common law fraud.

The Wells Fargo loan transaction and the Exchange Offering had a devastating effect on the members.  The decision to pledge previously unencumbered assets to Wells Fargo materially impaired the interests and rights of the members by stripping them of any recourse to REL's assets, putting them in a subordinate position to Wells Fargo.  The effect of the Exchange Offering was to turn the members from equity shareholders in REL into holders of promissory notes with security interests that were junior to Wells Fargo.  The Managers, Greenberg, and Wells Fargo disenfranchised the members, encumbered the assets on which the members' investments were based, and hid from them REL's continuing liquidity problems.

The Class Plaintiffs assert three claims against Wells Fargo: first, Wells Fargo is liable for aiding and abetting the Managers' breach of fiduciary duties; second, Wells Fargo is secondarily liable for securities fraud under Cal. Corp. Code § 25504.1; and, third, Wells Fargo is liable for violating the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*[8]

---

[8]The Class Plaintiffs assert similar claims against MF08.  The bankruptcy court held that these claims, relating solely to MF08, could not possibly belong to REL's estate.  Wells

C

Wells Fargo filed the adversary proceeding below, seeking by amended motion to stay and enjoin the Class Plaintiffs from prosecuting against it the claims in the Class Action.  The Class Plaintiffs opposed the motion.  The bankruptcy court conducted a hearing on the motion, after which it entered an oral ruling and written order denying Wells Fargo's amended motion.  The bankruptcy court held that the claims in the Class Action did not belong to REL and were not property of its estate.  In its oral ruling, it began by agreeing with REL that any claim arising from mismanagement of REL or misappropriation of REL's assets would constitute property of REL's estate, which would preclude the Class Plaintiffs from pursuing these claims to the detriment of REL's other creditors.  But from its reading of the consolidated complaint, and on the assumption that the Class Plaintiffs would not attempt to broaden their allegations if Wells Fargo's motion were denied, the bankruptcy court concluded that the causes of action as currently pleaded did not constitute property of REL's estate and thus were not stayed under § 362 of the Bankruptcy Code.  Applying the Fifth Circuit test for determining whether a claim is property of a debtor's estate, the bankruptcy court concluded that none of the claims was.  According to the bankruptcy court, the claim that Wells Fargo aided and abetted breach of fiduciary duties owed by the

---

Fargo does not challenge this ruling in this appeal.

Additionally, Greenberg initiated an adversary proceeding seeking to prevent the Class Plaintiffs from pursuing claims against it.  In the bankruptcy court's oral ruling, it held that the Class Plaintiffs' claims against Greenberg were not claims of REL's estate, and it dismissed the adversary proceeding.  Greenberg is not a party to this appeal.

Managers to the Class Plaintiffs and the other class members as a whole was not property of the REL estate because REL could not have sued Wells Fargo on such a claim on the petition date. The claim that Wells Fargo was secondarily liable for REL's securities law violations could not belong to REL because it is the party who allegedly committed the violations. And the other claims should be analyzed similarly, with the same result. The bankruptcy court distinguished the cases on which Wells Fargo relied to argue that the claims are property of the REL estate. It reasoned, *inter alia*, that "the Class Plaintiffs allege separate duties owed to them and misrepresentations made to them, among other things." R. 8:1383. And it held that "the harm alleged in each cause of action, if valid, is to [the Class Plaintiffs], not to [REL]." *Id.* at 1384. The bankruptcy court "conclude[d] that the causes of action pled in the Consolidated Complaint do not belong to [REL] and thus are not property of [REL's] bankruptcy estate[] and are not protected by the automatic stay." *Id.*

Wells Fargo appeals the bankruptcy court's order denying Wells Fargo's amended motion to stay class action claims and for issuance of a temporary injunction, and the bankruptcy court's final judgment dismissing the adversary proceeding.

## II

The question "[w]hether a specific cause of action belongs to a bankruptcy estate is . . . a matter of law that [the reviewing court] decide[s] by reference to the facial allegations in the complaint." *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 583 (5th Cir. 2008) (citing *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1285 (5th Cir. 1994)). "'Th[is] court reviews the bankruptcy court's conclusions of law *de novo*[.]'" *In re Nary*, 253 B.R.

752, 756 (N.D. Tex. 2000) (Fitzwater, J.) (quoting *In re ICH Corp.*, 230 B.R. 88, 91 n.10

(N.D. Tex. 1999) (Fitzwater, J.)).   Accordingly, this court considers the facial allegations of

the consolidated complaint to determine whether a particular state cause of action belongs

to the REL estate, without deferring in any respect to the decision of the bankruptcy court.

### III

"[P]roperty of the [bankruptcy] estate includes 'all legal or equitable interests of the

debtor in property as of the commencement of the case.'"  *Educators Grp.*, 25 F.3d at 1283

(quoting 11 U.S.C. § 541(a)(1)).  "The term 'all legal or equitable interests' has been defined

broadly to include causes of action."  *Id.* (citing *La. World Exposition v. Fed. Ins. Co.*, 858

F.2d 233, 245 (5th Cir. 1988)).  "If a cause of action belongs to the estate, then the trustee

has exclusive standing to assert the claim."  *Id.* at 1284 (citing cases).  "If, on the other hand,

a cause of action belongs solely to the estate's creditors, then the trustee has no standing to

bring the cause of action."  *Id.* (citing cases).  "Whether a particular state cause of action

belongs to the estate depends on whether under applicable state law the debtor could have

raised the claim as of the commencement of the case."  *Id.* (citing cases).  This question does

not turn on an evaluation of the merits of the claim.  "[W]hether the claim[] will ultimately

prove to be legally or factually valid is not [the court's] concern."  *Seven Seas*, 522 F.3d at

585.  "[T]he fact that [a party] ultimately may be unable to prevail on the claims does not

render the claims property of the estate."  *Id.* at 587-88.  Nor does it turn on the label given

to the claim.  The court should look past the nominal title given a claim when assessing

whether it is in substance duplicative or derivative of a claim that is property of the estate.

*See In re Madoff*, 848 F.Supp.2d 469, 482 (S.D.N.Y. 2012) ("Indeed, courts in this district have looked past the nominal title of the cause of action pleaded in assessing whether or not a claim is in substance duplicative or derivative of a claim that is the property of the Trustee.") (citing *See In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 439 (S.D.N.Y. 1993)), *appeal dismissed*, No. 12-1645 (2d Cir. May 25, 2012).

To determine whether the debtor could have raised the claim as of the commencement of the case, the court, "[a]s part of this inquiry, [looks] at the nature of the injury for which relief is sought." *Educators Grp.*, 25 F.3d at 1284; *see Seven Seas*, 522 F.3d at 585 ("[W]e consider whether under state law [the debtor] could have raised the claims as of the commencement of the bankruptcy, and examine the nature of the injury for which relief is sought."). "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Educators Grp.*, 25 F.3d at 1284 (citing cases). "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." *Id.* "[I]t is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." *Seven Seas*, 522 F.3d at 585 (citing *In re Zale Corp.*, 62 F.3d 746, 753 (5th Cir. 1995)). That the bankruptcy estate may have claims for its own direct injuries that it could have brought as of the commencement of the case does not mean that the creditor's claims are merely

derivative of the debtor's. *See id.* at 587. "[T]here is nothing illogical or contradictory about saying that [a defendant] might have inflicted direct injuries on both the [creditor] and [the debtor] during the course of dealings that form the backdrop of both sets of claims." *Id.*

IV

The court considers first whether the Class Plaintiffs' claim for aiding and abetting breach of fiduciary duties is property of the REL estate. Wells Fargo maintains that the Class Plaintiffs allege two distinct harms.[9] The Class Plaintiffs do not challenge this assertion, and they implicitly adopt it.[10] The court will therefore analyze the breach of fiduciary duties

---

[9]Wells Fargo asserts in its opening brief:

> The Consolidated Complaint identifies two distinct harms that the Class Plaintiffs purportedly suffered as a result of the breaches of fiduciary duty that the Managers allegedly committed and that Wells Fargo allegedly aided and abetted: (1) that the Managers incurred debt on behalf of REL that they allegedly had no authority to incur, and (2) that, by entering into the Exchange Offering, the Class Plaintiffs lost the ability they had as members of REL to control or remove the Managers, who, they allege, ultimately drove REL into bankruptcy.

Appellant Br. 12.

[10]In their brief, the Class Plaintiffs state:

> The Consolidated Complaint alleges wrongful conduct by the RE Loans Managers and Wells Fargo in connection with two events: (1) the secret closing of an unauthorized line of credit loan through which the Managers unilaterally encumbered all of RE Loans assets, and (2) the Exchange Transaction through which the Managers hid past securities violations, induced the RE Loans Members to approve the unauthorized loan and forfeit valuable ownership rights by exchanging them for promissory

- 11 -

claims according to these two alleged harms.

A

Considering the facial allegations of the consolidated complaint, the court holds that the Class Plaintiffs' claim for aiding and abetting breach of fiduciary duties based on the line of credit loan transaction is property of the REL estate.

1

The gravamen of this ground of the claim is that Wells Fargo aided and abetted the Managers in breaching their fiduciary duties to the Class Plaintiffs by carrying out an unauthorized scheme to borrow money from Wells Fargo, a third-party lender, under terms that made Wells Fargo a highly oversecured creditor and that heavily encumbered REL's assets. The Class Plaintiffs allege, in pertinent part, that they were injured because "[t]he Managers' decision to pledge previously unencumbered assets to Wells Fargo materially impaired the interests and rights of the Members by stripping them of any recourse to [REL's] assets. As a result of the assignment, the Members were placed in a subordinate position to Wells Fargo." Supp. R. 2:407-08; *see also id.* at 408 ("[T]hrough borrowing from a third party lender" the Managers "encumber[ed] the asset base that existed to back the

_____

notes having a junior security interest.

Appellees Br. 15. And in briefing whether the claim for aiding and abetting breach of fiduciary duties belongs to the REL estate, the Class Plaintiffs divide their argument between alleged harm arising from the line of credit loan, *id.* at 16-17, and alleged harm arising from the Exchange Offering, *id.* at 18-21. Even if they did so in response to how Wells Fargo organized its opening brief, the Class Plaintiffs do not expressly contest the premise that they are asserting injuries arising from two separate events or harms.

- 12 -

Members' investments."); *id.* ("Defendants . . . encumbered the assets upon which the Members' investments were based[.]").  Although the Class Plaintiffs attempt to cast the injury as harming them directly, this component of their claim at least implicitly alleges harm to REL itself.  The harm associated with this component of the claim is derivative of an injury to REL because the line of credit loan was made to REL, and its assets were encumbered before the Exchange Offering, at a time when the Class Plaintiffs[11] owned the encumbered assets as equity members of REL.[12]  The encumbering of REL's assets in turn injured the REL members' equity interests.  Had REL's assets not been encumbered, the members would not have been injured as equity owners.  Therefore, the alleged injuries the Class Plaintiffs suffered when REL's assets were encumbered by Wells Fargo's security interest were incurred derivatively.[13]

---

[11]Wells Fargo acknowledges that "[t]he Consolidated Complaint alleges that most of the Class Plaintiffs were equity investors in REL[.]" Appellant Br. 12.  The Class Plaintiffs point out that they represent not only investors in REL but investors in MF08.  For purposes of this decision, it is immaterial that fewer than all Class Plaintiffs were equity investors prior to the Exchange Offering.

[12]*See, e.g.,* Appellees Br. 9 ("The Exchange Transaction also eliminated the [REL] Members' equity shares in [REL] and replaced them with promissory notes with security interests junior to [those] held by Wells Fargo.").

[13]The Class Plaintiffs posit that, under California law, their claim is direct rather than derivative.  They quote the standard set by *Jones v. H.F. Ahmanson & Co.*, 460 P.2d 464, 470 (Cal. 1969), that a claim is derivative "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property . . ., or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets."  Appellees Br. 14 (ellipsis in original).  This assertion supports the court's conclusion that the Class Plaintiffs are alleging injury to REL's assets as a whole that, in turn (and derivatively), injured the REL equity owners.

In their brief, appellees essentially make three arguments, each of which lacks force. First, they argue that the consolidated complaint alleges direct harm when it asserts that Wells Fargo, by helping the Managers consummate the line of credit loan in secret, helped the Managers breach the duties of truthful disclosure and of fair treatment owed directly to the members under California law.  This argument addresses to whom the duty was owed, not the direct or derivative nature of the injuries the Class Plaintiffs allegedly incurred.

Second, the Class Plaintiffs maintain that the Managers' breach of fiduciary duties directly injured them by substantially impairing the value of the members' investments in REL by unilaterally encumbering REL's assets.  In support, they quote this allegation in the consolidated complaint: "Moreover, the Managers breached their duty of fair treatment by unilaterally — and without notice — encumbering the asset base that existed to back the Members' investments." Appellees Br. 17 (quoting consolidated complaint ¶ 93).  Given that the Class Plaintiffs were equity investors in REL before the Exchange Offering and at the time of the loan, this argument implicitly concedes that the injury to the members is derivative.

Third, the Class Plaintiffs contend that it is significant that the consolidated complaint does not allege that the line of credit loan injured REL by placing the company in debt; there are no allegations that the Managers engaged in self-dealing or breached any fiduciary duties owed to REL by secretly borrowing from Wells Fargo; and the consolidated complaint alleges that the loan provided REL with operating cash, enabled the Managers to pay distributions to members, and continued the existence of the company.  This argument is

defeated by the allegations of the consolidated complaint that clearly assert that the Managers injured REL by encumbering its assets in connection with the line of credit loan from Wells Fargo. Indeed, the consolidated complaint alleges, *inter alia*, that "[t]he terms of the line of credit loan — dictated by Wells Fargo — were draconian," Supp. R. 2:401, it labels the security requirement "exorbitant," *id.*; it characterizes the collateral-to-debt ratio as "astounding," *id.*, and "irregular and excessive," *id.*; and it asserts that "[t]he line of credit loan was a suspicious transaction," *id.*

2

The court next considers whether, on the petition date, REL could have brought a claim under California law against Wells Fargo for aiding and abetting breach of fiduciary duties based on the line of credit loan. The Class Plaintiffs essentially rely on their harm-related arguments to contend that REL could not have raised this claim. They maintain that REL could not have brought such a claim because the consolidated complaint plainly alleges breaches of fiduciary duties owed to the members that harmed them, and there are no allegations that the Managers owed the same fiduciary duties to REL, or assertions of mismanagement of, or injury to, REL directly. They posit that, under *Seven Seas*, it is immaterial that REL could have brought a completely separate claim against the Managers for mismanagement or self-dealing.

Having rejected above the Class Plaintiffs' arguments concerning the derivative nature of the harm, the court likewise rejects the same arguments presented in relation to this element. Moreover, the consolidated complaint on its face demonstrates that REL could have

raised a claim for aiding and abetting breach of fiduciary duties under state law.  For example, it alleges that Wells Fargo aided and abetted REL's Managers in entering into a line of credit loan with "draconian" terms, Supp. R. 2:401, and "irregular and excessive" collateral requirements, *id.*; that REL lacked authority to enter into the loan, *id.*, and that Wells Fargo knew the loan was unauthorized, *id.* at 403; and that the loan encumbered REL's asset base, *id.* at 408.

3

The court therefore holds that, to the extent the Class Plaintiffs' claim for aiding and abetting breach of fiduciary duties is based on the line of credit loan transaction, the claim is property of the REL estate.

B

The Class Plaintiffs' claim for aiding and abetting breach of fiduciary duties based on the Exchange Offering is not, however, property of the REL estate.

Wells Fargo maintains that the Class Plaintiffs must be alleging harm that is derivative to REL because their theory of liability is, and must be, that they suffered injury from the Exchange Offering by losing the right to control REL and thus to prevent the alleged mismanagement and mishandling of money that ultimately led to REL's bankruptcy.  Wells Fargo argues that the theme of injury through loss of the right of control animates the Class Plaintiffs' allegations, and that they suffered no other potentially cognizable injury from the Exchange Offering.  The court disagrees.

The consolidated complaint contains extensive allegations that the Class Plaintiffs

were misled into exchanging their equity interests in REL for promissory notes. The allegations of injury are of direct harm to the Class Plaintiffs, not explicitly or implicitly of harm to REL that injured the Class Plaintiffs derivatively or indirectly. *See, e.g.,* Supp. R. 2:388 (alleging that the Exchange Offering "transform[ed] the Members from equity shareholders in [REL] into creditors with security interests junior to Wells Fargo's."); *id.* at 408 (alleging that "[i]n one transaction orchestrated by the Managers, Greenberg and Wells Fargo, the Members lost all rights they had as equity shareholders in [REL] and were relegated with junior security interests.").

Accordingly, the court holds that, to the extent the Class Plaintiffs' claim for aiding and abetting breach of fiduciary duties is based on the Exchange Offering, the claims are not property of the REL estate.

V

The Class Plaintiffs' claim for secondary liability for securities fraud is not property of the REL estate.

The bankruptcy court held that this claim could not possibly belong to the estate because REL itself is alleged to have committed the securities fraud. Wells Fargo does not quarrel with this premise, but instead contends that the securities fraud claim is simply a relabeled cause of action for aiding and abetting breach of fiduciary duties. It argues that "[t]he Court should treat the cause of action for secondary liability for securities fraud as derivative of direct harm to REL for the same reasons as the aiding and abetting breach of fiduciary duty claim."  Appellant Br. 23.

The court will assume, without deciding, that REL could sue Wells Fargo under California law for secondary liability for REL's own acts of securities fraud.  Even so, the consolidated complaint alleges direct injury to the Class Plaintiffs, not injury to REL that harmed the Class Plaintiffs indirectly or derivatively.  The Class Plaintiffs allege that, in connection with the Exchange Offering, REL and its Managers made untrue statements of material fact and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of § 25401.  They assert that Wells Fargo knowingly and substantially assisted the securities violations with the intent to induce the Members' reliance, thus materially assisting in the securities fraud.  In other words, the securities fraud claim is based on the Exchange Offering, and the court has already held that the Class Plaintiffs were injured directly by the Exchange Offering conduct.  The claim does not explicitly or implicitly allege harm to REL itself, and the bankruptcy court correctly concluded that it was not property of the REL estate.

VI

The court holds that the Class Plaintiffs' UCL claim in part is property of the REL estate and in part is not.

The Class Plaintiffs state in their brief that "the alleged misconduct on which the UCL claim is based is the same as that supporting the aiding and abetting breach of fiduciary duties and securities fraud claims."  Appellees Br. 13.  They do not directly challenge Wells Fargo's contention that the UCL claims are dependent on the others.  Instead, they contend

that, like the other claims, this claim is "direct and belongs to [REL] investors, not to [REL] itself."  Appellees Br. 26.  The court therefore applies its conclusions above and holds that the UCL claim is property of the REL estate to the extent based on the line of credit loan, and otherwise is not property of the estate.

*    *    *

The court holds that the Class Plaintiffs' aiding and abetting breach of fiduciary duties claim and UCL claim based on the line of credit loan are property of the REL estate.  The Class Plaintiffs' aiding and abetting breach of fiduciary duties claim and UCL claim based on the Exchange Offering, and their claim for secondary liability for securities fraud, are not property of the REL estate.  The bankruptcy court's order and judgment are therefore AFFIRMED in part and REVERSED in part, and this adversary proceeding is REMANDED for further proceedings consistent with this opinion.  The parties shall bear their own taxable costs.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

March 28, 2013.


SIDNEY A. FITZWATER
CHIEF JUDGE